IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–01644–EWN–MJW

ROBERT E. PRESTON,

    Plaintiff,

v.

ATMEL CORPORATION,
PRESTON HARTMAN,
CHRIS RATHER, and
NICK REINERT,

    Defendants.

**ORDER AND MEMORANDUM OF DECISION**

    This is an employment discrimination case. Plaintiff Robert E. Preston asserts six claims for relief. Plaintiff asserts four claims against his former employer, Defendant Atmel Corporation ("Defendant Atmel"), based on allegations of racial discrimination and retaliation in violation of both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3. Plaintiff also alleges that Defendants Preston Hartman, Chris Rather, and Nick Reinert intentionally interfered with his prospective business relationship with Defendant Atmel. Finally, Plaintiff alleges that all Defendants engaged in outrageous conduct causing him severe emotional distress. This matter is before the court on four motions, all filed November 15, 2007: (1) "Motion of Atmel Corporation for Partial Dismissal;" (2) "Motion of Preston

Hartman to Dismiss;" (3) "Motion of Chris Rather to Dismiss;" and (4) "Motion of Nick Reinert to Dismiss." Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1343, and 1367.

**FACTS**

*1.    Factual Background*

The following facts are taken from Plaintiff's complaint and presumed to be true for purposes of this order. Plaintiff, an African-American male, began working for Defendant Atmel in 1997. (Am. Compl. and Jury Demand ¶¶ 4, 12 [filed Oct. 30, 2007] [hereinafter "Compl."].) From early in his tenure until October 2005, Plaintiff received consistently favorable performance reviews. (*See id.* ¶¶ 13–25.)

In October 2005, Defendant Hartman became Plaintiff's supervisor. (*Id.* ¶ 25.) At that time, there were four African-American employees, including Plaintiff, under Defendant Hartman's supervision. (*Id.* ¶ 26.) Defendant Hartman treated each of the four African-American employees unfairly. (*Id.*) For example, Defendant Hartman issued two "counseling notices" against Plaintiff for conduct that would normally merit only a "written reprimand." (*Id.* ¶ 27.) With the exception of Plaintiff, all of the African-American employees under Defendant Hartman's supervision were terminated in late 2005. (*Id.* ¶ 26.)

Just after the issuance of the two counseling notices, Defendant Hartman summarily placed Plaintiff on probation, and Plaintiff told Defendant Hartman that he believed this action was discriminatory. (*Id.* ¶ 28.) Such unjustified disciplinary actions continued through June 2006, when Plaintiff requested and received a transfer out of Defendant Hartman's supervision. (*Id.* ¶¶ 32–35, 38–40.) The transfer "constituted a demotion." (*Id.* ¶ 40.)

Plaintiff complained to his new supervisor, Defendant Reinert, about "the discriminatory treatment." (*Id.* ¶ 41.) Defendant Reinert told Plaintiff that "senior management, including [Defendant] Rather, had told him to document as much as possible on [Plaintiff]." (*Id.*) Defendant Reinert informed Plaintiff's coworkers that they should "document any concerns they had with [Plaintiff]." (*Id.* ¶¶ 43–46.) Those who refused were "targeted" for termination. (*Id.* ¶¶ 44, 46–47.) Defendants Reinert, Rather, and Hartman all participated in the effort to collect false allegations of Plaintiff's poor performance. (*See id.* ¶¶ 74–75, 97–98.) As all Defendants worked together to build a case for Plaintiff's termination, they eschewed Defendant Atmel's investigatory policies regarding employee discipline and refused to investigate Plaintiff's "numerous" complaints of discrimination. (*See id.* ¶¶ 36, 49–52.)

Plaintiff became depressed as a result of Defendants' actions. (*See id.* ¶ 55.) Because he found his working conditions to be intolerable, Plaintiff quit in October 2006. (*Id.* ¶¶ 56–57.)

### 2. *Procedural History*

On August 3, 2007, Plaintiff filed a complaint in this court. (Compl. and Jury Demand [filed Aug. 3, 2007].) On October 9, 2007, Defendants filed motions to dismiss. (*See* Mem. in Supp. of Mots. to Dismiss by Indiv. Defs. [filed Oct. 9, 2007]; Mem. in Supp. of Mot. for Partial Dismissal by Def. Atmel Corp. [filed Oct. 9, 2007].) Thereafter, Magistrate Judge Michael J. Watanabe granted Plaintiff leave to file an amended complaint. (*See* Min. Order [filed Oct. 31, 2007]; Compl.) Thus, Defendants' initial motions were rendered moot. (*See* Order [filed Feb. 22, 2008].)

On November 15, 2007, Defendants Hartman, Reinert, and Rather filed separate motions to dismiss Plaintiff's claims for outrageous conduct and intentional interference with prospective business advantage. (Mot. of Preston Hartman to Dismiss the Am. Claims Against Him Pursuant to Fed. R. Civ. P. 12[b][6] [filed Nov. 15, 2007]; Mot. of Nick Reinert to Dismiss the Am. Claims Against Him Pursuant to Fed. R. Civ. P. 12[b][6] [filed Nov. 15, 2007]; Mot. of Chris Rather to Dismiss the Am. Claims Against Him Pursuant to Fed. R. Civ. P. 12[b][6] [filed Nov. 15, 2007].) The same day, Defendant Atmel also filed a motion to dismiss Plaintiff's outrageous conduct claim against it. (Mot. of Atmel Corp. for Partial Dismissal of the Am. Claims Against it Pursuant to Fed. R. Civ. P. 12[b][6] [filed Nov. 15, 2007].) Mercifully, Defendants filed a consolidated memorandum in support of their individual motions. (Defs.' Consol. Mem. in Supp. of Mots. to Dismiss the Am. Compl. [filed Nov. 15, 2007] [hereinafter "Defs.' Br."].) On December 10, 2007, Plaintiff filed a response. (Resp. to Defs.' Mots. to Dismiss [filed Dec. 10, 2007] [hereinafter "Pl.'s Resp."].) On December 26, 2007, Defendants filed a joint reply brief. (Defs.' Reply Br. in Supp. of Mots. to Dismiss the Am. Compl. [filed Dec. 26, 2007] [hereinafter "Defs.' Reply"].) This matter is fully briefed.

**ANALYSIS**

*1.     Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), dismissal of a complaint was appropriate only when it appeared the plaintiff could prove "no set of facts" in support of the claims that would entitle him to relief. *See, e.g.*, *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). In *Bell Atlantic*, the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. *Bell Atlantic* did not, however, mark a sea change. As the Court explained in a case decided two weeks after *Bell Atlantic*, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic*, 127 S. Ct. at 1964); *see Alvarado*, 493 F.3d at 1215 n.2 (stating that *Bell Atlantic* and *Erickson* suggest "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief"); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (stating that courts must take as true "all plausible, non-conclusory, and non-speculative" facts alleged in a plaintiff's complaint).

## 2. *Evaluation of Claims*

Defendants argue for dismissal of Plaintiff's claims for tortious interference and outrageous conduct. (Defs.' Br.) In their brief, Defendants curiously proffer a set of unsupported factual allegations in an apparent attempt to clarify and contextualize the allegations in Plaintiff's complaint. (*See id.* at 2–3.) Defendants then rely on these unsupported allegations in making many of their arguments for dismissal. (*See id.* at 6–16.)

This practice is unprecedented. I decline to consider any of Defendants' factual allegations or the arguments premised thereupon. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) (stating the strict limitations under 12[b][6] preclude consideration of matters outside the complaint); Fed. R. Civ. P. 12(d) (2008) (indicating that it is within a court's discretion to exclude matters outside of the pleadings presented in a 12[b][6] motion). Thus, I now turn to Defendants' remaining arguments.

### a. *Intentional Interference with a Prospective Business Relation*

Plaintiff alleges intentional interference against Defendants Hartman, Rather, and Reinert. (*See* Compl. ¶¶ 96–101.) These Defendants contend that the claim fails because Plaintiff neglected "to allege specific, nonconclusory facts that meet the [claim's] elements." (Defs.' Br. at 13.) I disagree.

Colorado recognizes the tort of intentional interference with a prospective business relation. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 [Colo. Ct. App. 1981]). Thus,

> [o]ne who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* (citing RESTATEMENT [SECOND] OF TORTS § 766B [1979]). In short, intentional interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract. *Id.*

Under Colorado law, even a contract terminable at will is entitled to some protection from intentional interference. *Donohue v. Unipac Serv. Corp.*, 847 F. Supp. 1530, 1534 (D. Colo. 1994) (citation omitted). A corporate agent acting within the scope of his employment will generally not be held liable for interference with a contract between his employer and another employee. *Id.* (citing *Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 465 [D. Colo. 1992]). However, "[i]f the [agent] is motivated solely by a desire to harm one of the contracting parties or to interfere in the contractual relations between those parties, the interference is certainly improper." *Trimble v. City & County of Denver*, 697 P.2d 716, 726 (Colo. 1985) (citations omitted); *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. Ct. App. 2002).

In connection with his intentional interference claim, Plaintiff alleges that Defendants Hartman, Reinert, and Rather conspired to force his coworkers to create false documentation of his poor performance, which was then used to discipline Plaintiff. (Compl. ¶¶ 97–98.) Plaintiff further alleges that he found these unjustified actions so intolerable that he had no choice but to quit his job. (*Id.*) Accepting these reasonably well-plead allegations as true and construing them

in the light most favorable to Plaintiff, I find that they "plausibly support a legal claim for relief." *See Alvarado*, 493 F.3d at 1215 n.2. That is, they suggest that Defendants Hartman, Rather, and Reinert stepped beyond the scope of their employment to execute a plan to set Plaintiff up for unwarranted disciplinary action, and that such a plan was motivated solely by a desire to interfere with his contractual relationship with Defendant Atmel. *See Amoco Oil Co.*, 908 P.2d at 500; *Donohue*, 847 F Supp at 1534. While it is a close call, I find that Plaintiff's allegations satisfy the elements of the claim and surpass bare speculation to give the relevant Defendants "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*, 127 S. Ct. at 1964. Accordingly, I decline to dismiss Plaintiff's intentional interference claim.

### b. *Outrageous Conduct*

Plaintiff asserts a claim for outrageous conduct against all Defendants. (Compl. ¶¶ 72–80.) Defendants assert, *inter alia*, that Plaintiff's allegations: (1) fail to state a claim; and (2) fail to state an independently cognizable cause of action. (Defs.' Br. at 5–12.) I need only reach Defendants' first argument.

"Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994); *accord Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. Ct. App. 2003). Conduct that could be illegal or that some might consider reprehensible is not necessarily actionable. *See* RESTATEMENT (SECOND) OF

TORTS § 46, cmt. d (1965) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice . . . ."). In *Rugg v. McCarty*, the Colorado Supreme Court held that a claim for outrageous conduct contemplates only acts that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. " 476 P.2d 753, 756 (Colo. 1970) (citation and quotation marks omitted); *accord Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004).

The allegations that form the basis of Plaintiff's outrageous conduct claim are practically identical to those supporting his intentional interference claim. In essence, Plaintiff alleges that Defendants conspired to force his coworkers to create false documentation of his poor performance, which Defendants then used to discipline Plaintiff. (Compl. ¶¶ 74–75.) Plaintiff further alleges that this situation became intolerable and made him depressed. (*Id.* ¶¶ 55–57.)

While the alleged conduct is contemptible, I find that it is *less* egregious than conduct that other courts have determined to fall short of the formidable *Rugg* threshold. *See, e.g.*, *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (finding allegations "that [employer] engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that [employer] fired [plaintiff] to scapegoat him for these crimes" was not outrageous as a matter of law); *Pascouau v. Martin Marietta Corp.*, 185 F.3d 874, 1999 WL 495621 (10th Cir. 1999) (table) (finding no outrageous conduct even though plaintiff alleged that coworkers and supervisors frequently engaged in lewd discussions about their sexual

experiences, brought sexually suggestive materials to work, speculated about plaintiff's sexual preferences, called her nicknames referring to her breast size, and otherwise ridiculed and belittled her); *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. Ct. App. 2000) (granting summary judgment on an outrageous conduct claim premised on evidence that employer singled the plaintiff out for scrutiny, threatened to fire those coworkers who associated with him, threatened the plaintiff by phone, twice attempted to assault him with an automobile, and terminated him). Thus, I find that the alleged conduct is not so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. " *Rugg*, 476 P.2d at 756.

Plaintiff asserts that the Tenth Circuit's decision in *Riske v. King Soopers* counsels against this result. (Pl.'s Resp. at 3–4.) In *Riske*, the circuit court reviewed the trial court's decision to grant judgment as a matter of law under Rule 50(a)(1) on the plaintiff's outrageous conduct claim against a former supervisor. 366 F.3d at 1089–91. The plaintiff, a female, testified that she had received disturbing notes attached to anonymous gifts over the course of two years at work. *Id.* at 1087–88. The plaintiff suspected the source of this unwanted attention to be her supervisor, a male. *Id.* at 1088. The plaintiff testified that after the disturbing notes ceased, the same supervisor began "stalking" her, and also that, while at work, he would follow her around while "whistling in a taunting manner." *Id. This* unsettling conduct persisted for six months, notwithstanding the fact that the plaintiff "confronted [the supervisor] more than ten times about it." *Id.* at 1090. The Tenth Circuit determined that the case presented a "close question," but ultimately concluded the claim should have gone to a jury. *Id.* at 1089–90.

I find that the instant case presents no such "close question." Here, there is no conduct spanning multiple years. Nor is there any stalking or any "taunting" whistling. In short, here there is no ongoing, suggested threat of unwanted physical or sexual contact. Instead, in the case *sub judice*, all Plaintiff alleges is a conspiracy to build a case for his termination. Such allegations are insufficient to support a claim for outrageous conduct.

## 3. *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. DEFENDANT ATMEL's motion (#46) to dismiss is GRANTED.

2. DEFENDANT HARTMAN's, DEFENDANT REINERT's, DEFENDANT RATHER's motions (#43, #44, #45) to dismiss are GRANTED in part and DENIED in part. Such motions are granted with respect Plaintiff's third claim for relief, outrageous conduct. The motions are otherwise denied.

3. Any final judgment entered at the conclusion of the case shall reflect a judgment in favor of Defendants and against Plaintiff, dismissing Plaintiff's third claim for relief with prejudice.

Dated this 7th day of May, 2008

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States Chief District Judge