IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-01644-PAB-MJW

ROBERT E. PRESTON,

    Plaintiff,

v.

ATMEL CORPORATION,
PRESTON HARTMAN,
CHRIS RATHER, and
NICK REINERT,

    Defendants.

_____

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

    This matter is before the Court on the motion for summary judgment ("Defs.' Mot.") [Docket No. 95] of defendants Atmel Corporation ("Atmel"), Preston Hartman, Chris Rather, and Nick Reinert. The motion is fully briefed and ripe for disposition. For the reasons detailed below, the Court grants the motion for summary judgment.[1]

## I. STANDARD OF REVIEW AND THE NONMOVANT'S BURDEN

    While the Court would normally turn directly to a recitation of the factual background, there is a need here to first address the relevant standard of review and the parties' respective assertions regarding facts in dispute.

    Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits

---

[1] By order dated May 7, 2008, defendants' motions to dismiss were granted insofar as they related to plaintiff's outrageous conduct claim, which was his third claim for relief [Docket No. 100].

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

Mr. Preston, as the nonmoving party, "may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009). Mr. Preston has failed to do so. He does not specifically admit or deny the majority of defendants' proffered undisputed facts. In fact, plaintiff explicitly denies only two of the facts put forward by defendant, i.e., (1) that he "told Chris Rather of Atmel's Human Resources Department that he could not be exposed to the type of chemicals used in the Photo area (which was the area of his night shift work)." Defs'. Mot. at 6, ¶ 20, and (2) that "he was sleeping on the job." Pl.'s Br. in Opp. to Def.'s Mot. ("Pl.'s Br.") [Docket No. 101] at 10, ¶ 29.

As for the rest of the facts, plaintiff either admits them or contends the fact is not fully supported by defendants or the documents relied upon by defendants are not authenticated or admissible. He does so, however, largely without making specific objections. To take a simple example, defendants assert that "[p]laintiff suffers from 'obstructive sleep apnea,' first diagnosed in 1993," Defs.' Mot. at 2, ¶ 1, citing passages from the plaintiff's deposition. Plaintiff responds that "[t]his alleged undisputed fact is not completely supported by the references identified by Defendants." Pl.'s Br. at 6, ¶ 1. Then, after noting that the diagnosis year is not identified in the referenced passages, plaintiff adds: "It is Defendants' responsibility to support their statement of undisputed facts with a 'specific reference to material in the record which establishes that fact.' It is not Plaintiff's or the Court's responsibility to search the record to find support for Defendants' facts. . . ." *Id.* Plaintiff neither admits nor denies suffering from obstructive sleep apnea. There is, however, no disputing plaintiff's sleep apnea given that the record is replete with references to it, many of which are made by plaintiff. *See, e.g.*, Ex. I to Defs.' Mot. ("I was first diagnosed with sleep apnea in 1993."). Indeed, when responding to defendants' factual assertions and in making his own arguments, plaintiff references his sleep apnea. *See* Pl.'s Br. at 7, ¶ 4, & 9, ¶ 21.

Rather than simply admit or deny the facts asserted in defendants' motion, the other approach plaintiff takes is to attack the authenticity of certain exhibits in a separate section preceding his Response to Statement of Undisputed Material Facts ("Response to Statement"). While he identifies the disputed exhibits, plaintiff fails to argue, in anything but the most general fashion, why the exhibits are not properly authenticated or admissible. Pl.'s Br. at 1-2. In his Response to Statement section,

plaintiff then repeatedly refers to the earlier section without specifically explaining why each challenged exhibit is not properly before the court on this motion. Many of defendants' exhibits appear to have been produced by plaintiff in discovery or to have been created by plaintiff. For example, defendants rely upon a medical form filled out by plaintiff when asserting their Undisputed Material Fact #6. *See* Defs.' Mot. at 3. Plaintiff responds by citing the aforementioned general argument that most of defendants' exhibits are unauthenticated or inadmissable. *See* Pl.'s Br. at 7. He adds that "[i]t is Defendants' responsibility to support their statement of undisputed facts with a 'specific reference to material in the record which establishes that fact.' It is not Plaintiff's or the Court's responsibility to search the record to find support for Defendants' facts." *Id.* Defendants, however, did provide a specific reference to material in the record, and that material was in plaintiff's handwriting and appears to have been produced by plaintiff as part of discovery.[2]

These examples of how plaintiff has responded to defendants' factual assertions are indicative of plaintiff's overall approach in responding to defendants' motion. Plaintiff directs the Court's attention to no facts or evidence calling into question the

---

[2] *See Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641 (D. Colo. 2006) ("While it is true that the documentary evidence does not contain an affidavit or sworn statement, this evidence consists entirely of Swift's own records that plaintiffs obtained from Swift during discovery. In many instances, these documents are signed by Swift company officials or are on Swift company letterhead. Swift does not deny that these records are from their own files, and does not challenge the authenticity or pedigree of these records. Under these circumstances there is 'sufficient circumstantial evidence to support (their) authenticity.'") (quoting *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1423 (10th Cir.1991)).

many facts he vaguely resists in his response.[3] Instead, in his own Statement of Additional Disputed Facts, plaintiff excerpts long passages of his performance reviews from the time of his hire to June 2005. These facts are not in dispute. *See* Defs.' Reply in Supp. of Mot. ("Defs.' Reply") [Docket No. 106] at 15 ("Defendants do not dispute the selected quotes, but state that the performance evaluations themselves are more accurate and place the quotes into context.").

In light of the foregoing, the Court finds that plaintiff denies only that he "told Chris Rather of Atmel's Human Resources Department that he could not be exposed to the type of chemicals used in the Photo area (which was the area of his night shift work)." Defs.' Mot. at 6, ¶ 20. He also denies "he was sleeping on the job," Pl.'s Br. at 10, ¶ 29.[4] The Court finds it undisputed that plaintiff generally received positive performance reviews from the time of his hire until June 2005. As for the remainder of defendants' asserted facts, the Courts deems plaintiff to have admitted them. Furthermore, in the absence of clearly supported and specific objections by plaintiff, the Court will consider all admissible evidence where there is "sufficient circumstantial evidence to support (their) authenticity." *Denison*, 941 F.2d at 1423.[5] In that light, I turn

---

[3]The applicable Practice Standards at the time plaintiff's response was filed clearly required plaintiff to "admit or deny the asserted material facts set forth by the movant." Practice Standards (Civil Cases), Chief Judge Edward W. Nottingham, at 11, ¶ 4 ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial.") (emphasis removed).

[4]Plaintiff admitted to occasionally falling asleep at work between 1997 and 2003 during his deposition. *See* Ex. Y to Defs.' Mot. ("Preston Dep.") at 11-12.

[5]*See Law Co., Inc. v. Mohawk Const. and Supply Co., Inc.*, 577 F.3d 1164, 1170-71 (10th Cir. 2009) ("Mohawk also submitted numerous documents that were not

to the factual background of the case.

## II. FACTUAL BACKGROUND

Consistent with the foregoing, and unless otherwise indicated, the following facts are not in dispute. Mr. Preston began working as an Operator at Atmel, a computer chip producer, in 1997. Atmel promoted him in 1999 and 2000; after the latter promotion, Mr. Preston held the position of Specialist. From 1997 to June 2005, he received strong performance reviews from his supervisors.

Mr. Preston suffers from obstructive sleep apnea, which was first diagnosed on December 8, 1992. His sleep apnea worsened between January 2004 and February 2006. As of 2006, his condition was described by a treating physician as "severe."[6] Plaintiff's sleep apnea led to sleepiness at work as well as changes in his personality, including irritability. Mr. Preston wrote to the VA on January 17, 2005 that his "work performance is being severely impacted" by sleep apnea and that he "feel[s] that [he is] becoming more and more a liability to the company and a danger to [his] co-workers and [himself]." Defs.' Mot. at 4-5, ¶ 15. In the same letter, he indicated that it was "getting harder and harder . . . to be attentive, focus on what [he was] doing and remember how to perform simple job related tasks that [he] perform[ed] as a daily part

---

printed on Law letterhead. These exhibits are not automatically authenticated under our *Denison* rule. . . . Mohawk's submitted exhibits might be sufficiently authenticated taking into consideration the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances,' even if they do not appear on Law letterhead.") (quoting Fed. R. Evid. 901(b)(4)).

[6]The Veterans Administration ("VA") has determined that Mr. Preston, a veteran, is fifty percent disabled on account of his sleep apnea. *See* Ex. Y to Defs.' Mot. ("Preston Dep.") at 3.

of [his] job." Defs.' Mot. at 5, ¶ 16.

In light of Mr. Preston's sleep apnea, his sleep specialist, Dr. Mohnssen, recommended in January 2006 that Mr. Preston no longer work the night shift and should seek transfer to daytime work.[7]  Ex. H to Defs.' Mot. at 3 ("Clearly, shift work would be detrimental to him in this severity of obstructive sleep apnea, and I have advised him to seek daytime work if possible, so that he can have a fixed schedule and better nighttime sleep.").  Shortly thereafter, Atmel granted plaintiff's request for transfer to the day shift and reassigned him to a position as an Operator because no Specialist positions were available.

The record is clear that Mr. Preston had difficulty staying awake and focusing on his job responsibilities.  In the January 17, 2005 letter to the VA, Mr. Preston recounted that he was "continually fighting sleep and [could] fall asleep standing up."  Defs.' Mot. at 5, ¶ 16.  As already noted, he felt his job performance was suffering.  His co-workers began to notice.  One co-worker notified Mr. Hartman that Mr. Preston was not completing aspects of his work, such as preventative maintenance checks, keeping chemical tanks full, and ensuring that tools were functioning properly.  Another co-worker informed Mr. Reinert in June 2006 that Mr. Preston would leave "a mess" for the next shift and fail to leave important information.  Defs.' Mot. at 8, ¶ 33.  Mr. Reinert received other complaints from Mr. Preston's co-workers regarding his attitude, lack of

---

[7]Defendants also contend that Mr. Preston told Chris Rather in the Human Resources Department that he could not be exposed to the type of chemicals used in the area of his night shift.  Defs.' Mot. at 6, ¶ 20.  Plaintiff denies this.  Pl.'s Br. at 9, ¶ 20.

teamwork, and job performance.[8]

In November and December 2005, Atmel counseled or disciplined Mr. Preston for doing homework at work, for attendance issues, and for "shouting" and "yelling" at co-workers. Defs.' Mot. at 6, ¶ 23. In December 2005, Preston Hartman began supervising Mr. Preston and placed him on a Performance Improvement Plan ("PIP"). Atmel uses PIPs to "identify performance deficiencies, state performance expectations, and attempt to improve employee job performance." Defs.' Mot. at 6, ¶ 25.[9] Another Atmel supervisor, Nick Reinert, placed Mr. Preston on probation in June 2006 for job performance issues.[10]

In December 2005, Mr. Preston informed Mr. Hartman of his belief that Mr. Hartman was discriminating against him because of his race. *See* Ex. 1 to Pl.'s Br. ("Preston Aff.") at 4, ¶ 9. He shared this concern with Mr. Rather as well. *Id.*; Ex. S to Defs.' Mot.

In October 2006, before Atmel could place Mr. Preston on another PIP, Mr. Preston requested and was granted a medical leave based on psychiatrist Stephen Bonney's opinion that Mr. Preston's anxiety and depression precluded him from working

---

[8] While most of the defendants' asserted facts have been deemed admitted by plaintiff, these facts regarding co-worker complaints were some of the few specifically admitted by plaintiff.

[9] Between August 2004 and October 2006, twenty-seven employees at Atmel's Colorado Springs location were put on PIPs. Of those twenty-seven, twenty were White, four were African American, two were Hispanic, and one employee was identified as "other." Defs.' Mot. at 7, ¶ 26.

[10] Atmel would have put Mr. Preston on another PIP in October 2006, but Mr. Preston went on medical leave before it was able to do so.

at Atmel.[11]  By letter dated March 13, 2007, Dr. Bonney informed Atmel that Mr. Preston would be unable to return to work "for an indefinite period of time."  Defs.' Mot. at 9, ¶ 40.  In response, Atmel asked Mr. Preston if a reasonable accommodation might permit his return to work[12] and expressed its willingness to extend his leave until April 25, 2007.  Atmel informed Mr. Preston that he would be administratively terminated unless it received a response from him by April 25, 2007.  Mr. Preston never returned to work,[13] and Atmel administratively terminated him effective May 7, 2007.[14]  As Mr. Preston has specifically admitted, he "was medically unable to work at Atmel in 2006, was medically unable to work at Atmel in 2007, and remain[ed] medically unable to work at Atmel in 2008."  Defs.' Mot. at 10, ¶ 45; *see* Pl.'s Br. at 12, ¶ 45.

## III.  ANALYSIS

Mr. Preston filed this lawsuit alleging claims of workplace discrimination and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*. ("Title

---

[11]Dr. Bonney had diagnosed Mr. Preston as suffering from "major depression with obsessive features."  Defs.' Mot. at 4, ¶ 11.  According to Dr. Bonney, co-worker complaints about plaintiff's lack of cooperation and unfriendliness would be consistent with his condition.

[12]Ex. T to Defs.' Mot. at 2 ("If you and your physician believe that a work accommodation would make it possible for you to return to work, please let me know as soon as possible, in order that we can evaluate possible accommodations and obtain additional information from your physicians if necessary.").

[13]Neither party indicates whether Mr. Preston responded in any way to the letter.

[14]Not including Mr. Preston, Atmel administratively terminated twenty-seven employees for failing to return from medical leave between January 1, 2004 and December 31, 2007.  Of those twenty-seven employees, nineteen were White, four were Hispanic, three were African American, and one was Asian.  Defs.' Mot. at 10, ¶ 44.

VII") and 42 U.S.C. § 1981.  Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 2000e-3(a) bans employers from retaliating against an employee because the employee has opposed such unlawful employment discrimination.  Mr. Preston contends that defendants engaged in unlawful race discrimination, constructively discharged him, and retaliated against him in violation of Title VII.[15]

### A. Discrimination on Account of Race

Mr. Preston has pointed to no direct evidence of race discrimination.  The Court, therefore, applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to all of plaintiff's race discrimination claims.  *See Baca v. Sklar,* 398 F.3d 1210, 1218 n. 3 (10th Cir. 2005); *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  First, plaintiff must make out a prima facie case of employment discrimination.  *Garrett*, 305 F.3d at 1216.  "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel*

---

[15]Mr. Preston also brings claims for racial discrimination and retaliation pursuant to 42 U.S.C. § 1981.  The "same standards and burdens apply . . . . to claims brought under 42 U.S.C. § 1981." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).

*Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).[16] If Mr. Preston successfully makes out a prima facie case, the burden shifts to Atmel to offer a legitimate, nondiscriminatory reason for the adverse action. *Garrett*, 305 F.3d at 1216. If Atmel can offer such a reason, Mr. Preston then must provide evidence showing that race was "a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.*

There is no dispute that Mr. Preston belongs to a protected class. While the parties dispute whether he suffered an adverse employment action,[17] the Court need not resolve that question because Mr. Preston offers no evidence that Atmel's conduct "took place under circumstances giving rise to an inference of discrimination." *PVNF*, 487 F.3d at 800. He cites no direct or circumstantial evidence in the record supporting an inference that Atmel treated him differently because of his race.

Even if Mr. Preston had successfully presented a prima facie case, Atmel has

---

[16] *See PVNF*, 487 F.3d at 800 n.5 ("There exists some tension in our case law regarding what a plaintiff must establish as part of his or her prima facie case of discrimination. Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext. *Sorbo*, 432 F.3d at 1173 & n.5 (listing cases). Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.' *Id.* at 1173.").

[17] *Cf. PVNF*, 487 F.3d at 800 ("[A] written warning is an adverse employment action 'only if it effects a significant change in the plaintiff's employment status.'") (quoting *Haynes v. Level 3 Commc'ns., LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006)) (emphasis removed).

offered a legitimate, nondiscriminatory reason for terminating him. The undisputed facts indicate that Mr. Preston's sleep apnea adversely affected his ability to perform his job and that co-workers complained about his performance. He was counseled and disciplined by Atmel as a result. Thereafter, Mr. Preston took a medical leave from which he never returned, resulting in his administrative discharge. These legitimate, nondiscriminatory reasons for the adverse employment actions are not contradicted by anything in the record. In fact, Mr. Preston largely admits to these facts, simply speculating that discrimination led to his discipline, counseling, and eventual termination.

Furthermore, there is simply no evidence to indicate that Atmel's proffered reason is a pretext for discrimination. As Mr. Preston correctly points out, he "can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Garrett*, 305 F.3d at 1217 (citation omitted).

Here, Mr. Preston contends that his long history of positive performance reviews, followed by a sharp drop in 2005, demonstrates pretext. In making that argument, he relies on *Garrett*. The plaintiff in *Garrett* also had a long record of positive performance reviews, followed by a sharp drop. In *Garrett*, however, the plaintiff had taken a leadership position in "an internal diversity program aimed at promoting the hiring of people of color and fostering relationships with minority firms." *Garrett*, 305 F.3d at

1214. "The period following Mr. Garrett's engagement in diversity actions . . . coincide[d] with the distinct change in management attitudes towards Mr. Garrett." *Id.* Then, "[i]n 1992, Mr. Garrett's ranking was lowered once more, this time to 'action needed' status. Mr. Garrett's drop in status coincided with his participation in the first ever African-American celebration at the Loveland site, an event he worked very hard to have management attend." *Id.* at 1215. Thereafter, despite having his ranking elevated again, the plaintiff was subjected to unequal treatment, not being provided with "a computer with greater capacity and other work equipment similar to those provided to other engineers." *Id.* In September 1993, a manager informed plaintiff that "he and the other managers who were in the ranking session 'were tired of hearing about "that diversity stuff."'" *Id.* Mr. Garrett also presented evidence that a similarly situated employee was treated differently and that his employer had deviated from its normal procedures. *See id.* at 1219-20; *cf. PVNF*, 487 F.3d at 800-01 ("One method by which a plaintiff can meet th[e] burden [of showing that adverse action occurred under circumstances that give rise to an inference of discrimination] . . . is to show that the employer treated similarly situated employees more favorably."). The *Garrett* court concluded that this evidence, when viewed in the light most favorable to plaintiff and "in the aggregate," *Garrett*, 305 F.3d at 1220, presented a genuine issue of material fact on the question of pretext. *See id.* at 1218 ("While actual performance may constitute a legitimate basis for different treatment, on this record there is a fact question regarding whether Mr. Garrett's performance was the true basis for his poor evaluations and rankings.") (citation omitted).

Unlike in *Garrett*, Mr. Preston has presented no evidence upon which a jury could rest a finding of pretext. The drop in his performance reviews coincided with an admitted drop in his job performance. In other words, there are no "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Garrett*, 305 F.3d at 1217 (citation omitted). In light of the uncontested facts in this case, Mr. Preston's attempt to characterize the performance rating system as subjective and to rely upon his receiving a rating six months late is unavailing as well.[18] There is simply no evidentiary basis identified by plaintiff upon which a jury could conclude that Atmel's proffered reasons for administratively discharging Mr. Preston are "unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Consequently, Atmel is entitled to summary judgment on the claim of disparate treatment.

### B. Constructive Discharge

Atmel contends that Mr. Preston cannot assert a constructive discharge claim because he did not quit, but rather was terminated. Even assuming, however, that Mr. Preston's decision not to return from leave is sufficient to trigger the constructive

---

[18]Mr. Preston received a "merit" raise for his performance in 2005, thus demonstrating, he argues, that his weakening reviews were pretexts for discrimination. *See* Pl.'s Br. at 27. Defendant Rather, however, testified that it was his understanding that "merit" raises were "not tied to performance reviews." Ex. HH to Defs.' Reply at 3. Mr. Preston has pointed to no evidence calling this into question.

discharge analysis, his claim does not survive summary judgment.[19]

The Tenth Circuit applies an objective test to constructive discharge claims:

> Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. Essentially, a plaintiff must show that she had no other choice but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.

*Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004) (quotations, citation, and emphasis omitted). "The plaintiff's burden in a constructive discharge case is substantial . . . ." *PVNF*, 487 F.3d at 805; *see Garrett*, 305 F.3d at 1221 ("The bar is quite high in such cases.").

Mr. Preston has failed to provide any evidence in support of his constructive discharge claim. Even if plaintiff had been able to present some evidence of discrimination, which he has not, that alone would be insufficient to support his constructive discharge claim. *See PVNF*, 487 F.3d at 805 ("[S]howing that the employer's conduct meets the definition of 'tangible employment action' or 'adverse

---

[19]Mr. Preston contends that "Defendants do not challenge whether the working conditions at Atmel compelled Mr. Preston to resign," and, therefore, they have "waived that argument." Pl.'s Br. at 31. While defendants focused their argument on the question of whether Mr. Preston's failure to return from leave and ultimate termination may support a constructive discharge claim, they also included the legal standard that "a plaintiff must establish deliberate action by an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." Defs.' Mot. at 16-17. As noted above, ultimately, Mr. Preston, as the nonmoving party, "may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

employment action' is 'not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable.'") (citations omitted); *cf. Anderson v. Clovis Mun. Schools*, 265 F. App'x 699, 707 (10th Cir. 2008) (unpublished) ("It is not enough that his employer's conduct constituted adverse employment action or that it was discriminatory . . . ."). Mr. Preston presents no evidence supporting a finding that he had no choice but to quit. *See Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004) ("The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions."). Rather, he simply contends that was the case. *Cf. Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000) ("Ms. Heno relies on the same evidence as her retaliation claim, and makes much of the fact that she was suffering from depression, which she attributes to her work conditions. However, given the objective standard, an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim.").

As a result, defendants are entitled to summary judgment on plaintiff's constructive discharge claim.

### C. Retaliation

Employers may not retaliate against an employee for opposition to conduct outlawed by Title VII. 42 U.S.C. § 2000e-(3)(a). "A prima facie case of retaliation requires a plaintiff to show (1) that she engaged in protected opposition to

discrimination, (2) that a reasonable employee would have found the challenged action materially adverse – that is, that the action might 'dissuade[] a reasonable worker from making or supporting a charge of discrimination,' and (3) that a causal connection exists between the protected activity and the materially adverse action." *PVNF*, 487 F.3d at 803 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted)); *see Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007) (outlining the Supreme Court's clarification in *White* of the appropriate prima facie standards).  "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007).  "[T]emporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection . . . ." *PVNF*, 487 F.3d at 804; *see Williams*, 497 F.3d at 1091.  Absent a "very close" temporal connection, however, Mr. Preston would have to "offer additional evidence to establish causation." *O'Neal*, 237 F.3d at 1253.

Here, the record is not sufficiently clear regarding the timing of Mr. Preston's complaints and the respective retaliatory acts he alleges followed.  It appears, however, that there was temporal proximity between certain negative performance reviews and Mr. Preston's complaints of discrimination.[20]  Other than this temporal proximity, there is

---

[20] *Cf. PVNF*, 487 F.3d at 804 ("We have noted that '[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors.'") (quoting *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)).

no other evidence of any plausible connection between Mr. Preston's complaints and the adverse actions by Atmel. He simply asserts that was the reason. *Cf.* Ex. Y to Defs.' Mot. ("Preston Dep.") at 33. Nevertheless, as noted above, the Tenth Circuit has found temporal proximity to be sufficient to make out a prima facie case under certain circumstances. Therefore, and in light of the lack of clarity surrounding the relevant timing in this case, the Court will proceed to the second step of the burden shifting framework.

Atmel has offered a legitimate, nondiscriminatory reason for its adverse actions. The record is virtually uncontested that Mr. Preston's job performance began to suffer and that he ultimately went on leave, and did not return. His counseling and discipline were in response to the former, his administrative discharge in response to the latter. For a jury to find otherwise, it would have to rely on speculation alone.

Furthermore, at the final step of the analysis, there is no evidence to support a jury finding that Atmel's reason was a pretext for discrimination. *Cf. PVNF*, 487 F.3d 805 ("[N]either this Court, nor a jury, may act as a 'super personnel department . . . .'") (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). To show pretext here, Mr. Preston would have to show that Atmel took its adverse actions against him "on account of [his] decision to invoke [his] Title VII privileges rather than in furtherance of some legitimate business interest. . . ." *Williams*, 497 F.3d at 1092. In fact, Mr. Preston offers nothing but speculation in response to Atmel's proffered reasons for the adverse employment actions and does not dispute the underlying facts surrounding them.

### D. Intentional Interference with Prospective Business Advantage

Mr. Preston also raises a state law cause of action for intentional interference with prospective business advantage against defendants Hartman, Reinert, and Rather. "To establish a claim for tortious interference with prospective business relations under Colorado law, a plaintiff must show intentional and improper interference with another's prospective contractual relation." *Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.*, 311 F. Supp. 2d 1048, 1117 (D. Colo. 2004) (emphasis omitted) ("Colorado has adopted the Restatement (Second) of Torts §§ 766B, 767, and 768 in determining whether a party is liable for intentional interference with prospective business advantage."). Mr. Preston has offered no evidence to support his contention that these defendants' "purpose in interfering with Preston's advantageous business relationship with Atmel was improper." Am. Compl. [Docket No. 37-2] at 14, ¶ 99. Rather, as discussed above, defendants have offered uncontested evidence that plaintiff was disciplined and eventually terminated due to legitimate job related reasons. Mr. Preston's conclusory assertions to the contrary are insufficient to survive summary judgment.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion for summary judgment [Docket No. 95] is GRANTED.  Further, it is

**ORDERED** that judgment enter in favor of defendants and against plaintiff on all claims, including plaintiff's third claim for relief pursuant to the Court's order of May 7,

2008 [Docket No. 100].

DATED January 13, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge